UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ELIZABETH REDENBAUGH,
Executor of the Estate of Robert A. Swaim,

v.

HUNG CAO, in his official capacity as Acting Secretary of Navy, et al.,

Defendants.

Civil Action No. 25-2526 (DLF)

**PLAINTIFF'S COMBINED REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS


Page

Table of Authorities ..... iii

PRELIMINARY STATEMENT ..... 1

I. STANDARD OF REVIEW ..... 3

A. Summary Judgment on the Administrative Record ..... 3

B. APA Review ..... 4

C. Deference and its Limits ..... 4

D. Governing Disability and Correction Framework ..... 5

II. ARGUMENT ..... 5

A. The Secretary's Separately Unfitting Requirement is Contrary to Law, Entitling Plaintiff to Summary Judgment and Defeating the Cross-Motion ..... 5

(i) Even Assuming a Separately Unfitting Requirement, the Physician Advisor's Finding Establishes That PTSD Was Independently Unfitting. ..... 5

(ii) Independently, the Legal Framework Governing Mr. Swaim's 1957 Separation Did Not Impose the Separately Unfitting Requirement the Secretary Applied. ..... 6

(iii) The Government's Retroactivity Argument Mischaracterizes Plaintiff's Position and Does Not Resolve Plaintiff's Challenge Under the Law Governing the 1957 Separation. ..... 9

B. The Secretary Failed to Apply the Mandatory Liberal Consideration Required by 10 U.S.C. § 1552(h), Which Reaches the Fitness Determination. ..... 10

(i) Liberal Consideration Governs the Fitness Determination, and the Vazirani Memorandum Cannot Narrow the Statute's Command. ..... 10

(ii) Applying § 1552(h) to the Present Correction Proceeding does not Require Retroactive Application of Later Substantive Disability Law. ..... 15

C. The Decision Is Unsupported by Substantial Evidence and Arbitrary and Capricious. ..... 15

(i) The Secretary Arbitrarily and Capriciously Rejected the Physician Advisor's Assessment of Unfitness by Relying on Isolated Observations While Disregarding the Medical Evidence Supporting that Assessment. ..... 15

(ii) The Secretary's Refusal to Rate Contributing Conditions is Arbitrary and Capricious and Violates the 1957 Law. ..... 19

Table of Contents (continued)

Page

D. The Proper Remedy Is Vacatur and Remand For Reconsideration Under the Correct Legal Standards. ........ 20

III. CONCLUSION ........ 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Radio Relay League, Inc. v. FCC*,
524 F.3d 227 (D.C. Cir. 2008) .......... 19

*Anderson v. United States Department of Defense*,
No. 24-cv-1916 (JMC), 2026 WL 850655 (D.D.C. Mar. 27, 2026) .......... 10

*Bee v. United States*,
181 F.4th 1348 (Fed. Cir. 2026) .......... *passim*

*Bussey v. Driscoll*,
131 F.4th 756 (9th Cir. 2025) .......... 11, 13, 15

*Cone v. Caldera*,
223 F.3d 789 (D.C. Cir. 2000) .......... 4

*Doyon v. United States*,
58 F.4th 1235 (Fed. Cir. 2023) .......... 10, 11, 12, 13, 15

*Frizelle v. Slater*,
111 F.3d 172 (D.C. Cir. 1997) .......... 6, 19, 20

*Jimenez v. United States*,
179 Fed. Cl. 631 (2026) .......... 2, 12

*Kreis v. Sec'y of the Air Force*,
866 F.2d 1508 (D.C. Cir. 1989) .......... 4, 20

*Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983) .......... 4, 10, 17

*Prewitt v. United States*,
174 Fed. Cl. 759 (2025) .......... 15, 21

*Price v. Army Review Bd. Agency*,
2026 U.S. Dist. LEXIS 197181 (W.D. Pa. Sept. 1, 2026) .......... 13

*Qoye v. United States*,
185 F.4th 1139 (Fed. Cir. 2026) .......... 10, 12

*Rieth v. United States*,
462 F.2d 530 (Ct. Cl. 1972) .......... 7, 9

*Sierra Club v. Salazar*,
177 F. Supp. 3d 512 (D.D.C. 2016) ........................................ 19

*Sissel v. Wormuth*,
77 F.4th 941 (D.C. Cir. 2023) ........................................ 8, 10

*Vasquez v. Driscoll*,
No. 1:24-cv-1373 (TNM), 2025 WL 1865134 (D.D.C. July 7, 2025) ........................................ 13, 20

*White v. United States*,
179 Fed. Cl. 609 (2026) ........................................ 3, 12, 14

**Statutes**

10 U.S.C. ch. 61 ........................................ 21

5 U.S.C. § 706(2)(A), (E) ........................................ 4

10 U.S.C. § 1201 ........................................ 8

10 U.S.C. § 1201(a) ........................................ 1, 6

10 U.S.C. § 1201(a)–(b) ........................................ 5

10 U.S.C. § 1203 ........................................ 5

10 U.S.C. § 1216a(b) ........................................ *passim*

10 U.S.C. § 1552(a)(1) ........................................ 4, 5

10 U.S.C. § 1552(g)(2) ........................................ 5, 16

10 U.S.C. § 1552(h) ........................................ *passim*

10 U.S.C. § 1552(h)(1) ........................................ 2, 10, 11

10 U.S.C. § 1552(h)(1), (2)(B) ........................................ 21

10 U.S.C. § 1552(h)(2)(B) ........................................ 2, 5

Act of Aug. 10, 1956, ch. 1041, 70A Stat. 91 ........................................ 6

**Other Authorities**

Dep't of Def., Memorandum for Secretaries of the Military Departments, Guidance to Military Discharge Review Boards and Boards for Correction of Military/Naval Records Regarding Equity, Injustice or Clemency Determinations, Jul. 25, 2018, *available at*: https://afrba-portal.cce.af.mil/app/assets/2018-Wilkie-Memo-25-Jul-2018-DRB-Guidance.pdf ....21

Dep't of Def., Memorandum for Secretaries of the Military Departments, Clarifying Guidance to Boards for Correction of Military/Naval Records Considering Cases Involving Both Liberal Consideration Discharge Relief Requests and Fitness Determinations, Apr. 4, 2024, *available at*: https://www.secnav.navy.mil/mra/bcnr/Documents/Vazirani%20Memo%20%28Liberal%20Consideration%20and%20Fitness%20Determinations%29.pdf ....2, 11

Discharge Due to Mental Health Conditions, Sexual Assault, or Sexual Harassment, Aug. 25, 2017, *available at*: https://DOD.defense.gov/Portals/1/Documents/pubs/Clarifying-Guidance-to-Military-Discharge-Review-Boards.pdf ....14

DoDD 1332.11, pt. II.a, encl. 1 (Jan. 6, 1954) ....7

Fed. R. Civ. P. 56(a) ....3

Local Civ. R. 7(h)(2) ....3, 4

*Hearing to Receive Testimony on the Departments of Defense and Veterans Affairs Disability Rating Systems*, S. Hrg. 110-212 (2007) (response of Lt. Gen. James Terry Scott) ....8, 9

## PRELIMINARY STATEMENT

The Secretary of the Navy ("the Secretary," acting here through the Assistant General Counsel (Manpower & Reserve Affairs) under the Secretary's delegated authority) accepted the central medical findings supporting Mr. Robert Swaim's request for disability retirement: he developed post-traumatic stress disorder ("PTSD") as a result of military sexual trauma ("MST") during his 1955–1957 naval service, and that PTSD contributed to the development of his unfitting duodenal ulcer. The Secretary found those conclusions supported "with or without" liberal consideration, and agreed Mr. Swaim would expect to receive a more favorable outcome under the same circumstances today. AR 012–13. Having made those findings, the Secretary nonetheless refused to correct Mr. Swaim's record — on the single ground that his PTSD was not separately unfitting. AR 013.

The Government assumes Congress's enactment of 10 U.S.C. § 1216a(b) in 2008 establishes that contributing conditions could lawfully be excluded before that time. That conclusion is incorrect. The later statute expressly requires consideration of conditions that render a member unfit individually or collectively, but its enactment does not establish what the governing statute and disability regulations required in 1957. Plaintiff's claim rests on the regulations in force in 1957 and the Secretary's accepted finding that PTSD contributed to Mr. Swaim's unfitting ulcer condition.

The decision should therefore be vacated because the Secretary imposed a requirement unsupported by the governing law, failed to apply mandatory liberal consideration to the fitness determination, and inadequately explained his rejection of the medical evidence supporting PTSD-related unfitness. The Government's cross-motion supplies no basis to sustain those errors.

First, the Secretary's requirement that PTSD be "separately unfitting" finds no support in the law governing Mr. Swaim's 1957 separation. The controlling inquiry was whether physical disability rendered him unfit to perform the duties of his office, grade, rank, or rating. 10 U.S.C. § 1201(a). Neither that statute nor the 1957 governing legal authority required each contributing condition to be independently disqualifying before it could be considered in the disability

determination. Having accepted that PTSD contributed to Mr. Swaim's unfitting ulcer condition, the Secretary could not exclude it merely because it was not independently unfitting. AR 012–13. The Government's effort to recast Plaintiff's argument as a demand for retroactive application of 10 U.S.C. § 1216a(b) fares no better. Plaintiff does not need § 1216a(b) to prevail. The law in force in 1957 is enough. Section 1216a(b) merely confirms what the Secretary's decision ignores: a condition that contributes to the disability rendering a servicemember unfit cannot be dismissed simply because it was not, standing alone, separately unfitting.

Second, and independently, the Secretary failed to apply the liberal consideration required by 10 U.S.C. § 1552(h). The statute applies to a former member whose PTSD is "related to combat or military sexual trauma, as determined by the Secretary concerned," § 1552(h)(1), and requires liberal consideration of whether PTSD "potentially contributed to the circumstances resulting in the discharge or dismissal," § 1552(h)(2)(B). The Secretary's finding that Mr. Swaim's PTSD arose from military sexual trauma therefore triggered the statutory mandate. AR 012–13. Accepting the existence and origin of his PTSD did not satisfy the separate obligation to apply liberal consideration to its contribution to the circumstances resulting in his disability discharge.

The Government relies on the 2024 Vazirani Memorandum to exclude the fitness determination from that review. *See* Dep't of Def., Memorandum for Secretaries of the Military Departments, Clarifying Guidance to Boards for Correction of Military/Naval Records Considering Cases Involving Both Liberal Consideration Discharge Relief Requests and Fitness Determinations, Apr. 4, 2024, *available at*: https://www.secnav.navy.mil/mra/bcnr/Documents/Vazirani%20Memo%20%28Liberal%20Consideration%20and%20Fitness%20Determinations%29.pdf.

But the statutory text contains no such exception. In *Bee v. United States*, the Federal Circuit explained that § 1552(h) reaches the fitness determination where a servicemember seeks to change the narrative reason for discharge to medical disability retirement. *Bee v. United States*, 181 F.4th 1348 (Fed. Cir. 2026). Two recent decisions of the Court of Federal Claims have likewise held the Vazirani Memorandum contrary to law. *See Jimenez v. United States*, 179 Fed.

Cl. 631 (2026); *White v. United States*, 179 Fed. Cl. 609 (2026). Although those decisions do not bind this Court, they provide persuasive confirmation of the conclusion compelled by the statute's text. Congress required liberal consideration of PTSD's potential contribution to the circumstances resulting in discharge, and an administrative memorandum cannot remove the fitness inquiry from that requirement.

Third, the Secretary's decision is unsupported by substantial evidence. The Secretary rejected the only comprehensive medical opinion in the record — that of the Board's own Physician Advisor, a psychiatrist expert in trauma related to sexual assault — without identifying any contrary medical evidence or adequately explaining his rejection of the Physician Advisor's conclusion. In its place, he relied on a brief, two-week period of symptom improvement in early 1957 while disregarding the broader record, which reflects nearly five months of psychiatric and gastrointestinal hospitalization, including an approximately three-month admission immediately preceding the convening of the fitness board. Instead of reasoned decision-making, the Secretary is selectively relying on a sliver of the record to avoid the implications of the record as a whole.

The Government cannot defend the decision by reframing the issue or narrowing the record. The Secretary found that Mr. Swaim's PTSD arose from MST and contributed to development of his unfitting ulcer with or without liberal consideration. Having made those findings, the Secretary could not lawfully deny relief based on the mistaken assertion that contributing conditions did not merit a rating. Even if that requirement applied, the Secretary provided no explanation for rejecting the Physician Advisor's express finding that PTSD itself rendered Mr. Swaim unfit. AR 022–23.

The Court should grant Plaintiff's motion, deny the cross-motion, vacate the Secretary's decision, and remand for reconsideration under the correct legal standards.

# I. STANDARD OF REVIEW

## A. Summary Judgment on the Administrative Record

This case is resolved on the administrative record, so the ordinary summary-judgment inquiry into disputed facts does not apply. Fed. R. Civ. P. 56(a); D.C. Local Civ. R. 7(h)(2) (herein

"LCvR") (exempting record-review cases from the statement-of-material-facts requirement). The Court's task is not to find facts but to test the agency action against the administrative record. LCvR 7(h) cmt.

**B. APA Review**

The Court must set aside agency action that is arbitrary, capricious, not in accordance with law, or unsupported by substantial evidence, reviewing the whole record. 5 U.S.C. § 706(2)(A), (E). Agency action is arbitrary and capricious when the agency fails to consider an important aspect of the problem or offers an explanation that runs counter to the evidence before it. *Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

**C. Deference and its Limits**

Correction-board decisions are afforded an unusually deferential application of the arbitrary-or-capricious standard, reflecting that the Secretary acts only when he considers it necessary to correct an error or remove an injustice. 10 U.S.C. § 1552(a)(1); *see Cone v. Caldera*, 223 F.3d 789 (D.C. Cir. 2000); *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508 (D.C. Cir. 1989). Such deference does not extend to legal error or to a decision that disregards the record: even the most deferential review requires a rational connection between the facts the agency found and the conclusion it reached. *Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). That is the point in genuine contention here. Neither the deference owed correction boards, the presumption of regularity, nor Plaintiff's burden to show error by cogent and clearly convincing evidence can insulate a decision that rests on an atextual legal requirement or on the wrong evidentiary standard. Legal error receives no deference, and the Government's characterization of Plaintiff's challenge as "mere disagreement" cannot convert a misapplication of the governing standard into a reasoned exercise of discretion. Deference is not a rubber stamp.

### D. Governing Disability and Correction Framework

A member may be retired for disability only upon a determination by the Secretary concerned that a member described in subsection (c) is unfit to perform the duties of the member's office, grade, rank, or rating because of physical disability, and, for members below 20 years of service, only where the disability is rated at least 30 percent under the standard schedule of rating disabilities in use by the Department of Veterans Affairs. 10 U.S.C. § 1201(a)–(b). Where the rating is below 30%, the member is separated with severance pay rather than retired. 10 U.S.C. § 1203. The Secretary may correct any military record when the Secretary considers it necessary to correct an error or remove an injustice. 10 U.S.C. § 1552(a)(1). For a former member whose PTSD is related to combat or military sexual trauma, the board "shall…review the claim with liberal consideration to the claimant that post-traumatic stress disorder…potentially contributed to the circumstances resulting in the discharge or dismissal." 10 U.S.C. § 1552(h)(2)(B). A board reviewing such a claim must also seek the advice of a psychiatrist, psychologist, or social worker with training on mental health issues associated with post-traumatic stress disorder. 10 U.S.C. § 1552(g)(2).

## II. ARGUMENT

### A. The Secretary's Separately Unfitting Requirement is Contrary to Law, Entitling Plaintiff to Summary Judgment and Defeating the Cross-Motion.

#### (i) Even Assuming a Separately Unfitting Requirement, the Physician Advisor's Finding Establishes That PTSD Was Independently Unfitting.

The Court need not resolve the contested history of the 1957 framework to rule for Plaintiff, because even if the governing law required PTSD to be "separately unfitting," the record establishes that it was. The Board's Physician Advisor (a psychiatrist expert in trauma related to sexual assault, per 10 U.S.C. § 1552(g)(2)) did not merely conclude that PTSD contributed to the ulcer. He expressly concluded that Mr. Swaim "was unfit for service due not only to his duodenal ulcer, but also for PTSD," and recommended medical retirement on both conditions. AR 022–23. That is affirmative medical evidence satisfying any separately unfitting requirement.

The Secretary never engaged that finding. He concluded instead that the record contained no evidence suggesting Mr. Swaim's mental condition impaired his ability to perform his duties, and that only his physical symptoms rendered him unfit. AR 013. That conclusion cannot be defended as a mere disagreement about which conditions could legally be rated; it rejected the Physician Advisor's substantive assessment of fitness without identifying any contrary medical evidence. A correction board may not pass over a non-frivolous argument that could affect the disposition. *Frizelle v. Slater*, 111 F.3d 172, 177 (D.C. Cir. 1997). Because the Physician Advisor's finding resolves the separately unfitting question on the record, the Court may rule for Plaintiff without reaching the historical-framework question addressed below.

**(ii) Independently, the Legal Framework Governing Mr. Swaim's 1957 Separation Did Not Impose the Separately Unfitting Requirement the Secretary Applied.**

Independent of the Physician Advisor's finding discussed above, the legal framework that governed Mr. Swaim's 1957 separation did not impose a separately unfitting requirement at all.

The statute governing Mr. Swaim's separation posed a single inquiry: whether "physical disability" rendered him "unfit to perform the duties of the member's office, grade, rank, or rating." 10 U.S.C. § 1201(a) (enacted by Act of Aug. 10, 1956, ch. 1041, 70A Stat. 91). It separately required assessment of the percentage of that disability under the Veterans Administration's rating schedule. The text thus mandated disability-related unfitness and a qualifying disability percentage. It did not require each condition included in that percentage to independently render the member unfit.

That distinction matters here. The statutory inquiry was whether physical disability prevented the member from performing his duties. Nothing in the text required the Secretary to isolate each contributing condition and determine whether it would produce unfitness in the absence of others. Plaintiff's reading permits consideration of a condition contributing to the disabling impairment without imposing an additional separately unfitting requirement. Although the statute did not expressly enumerate every condition that must be rated, its unfitness requirement does not itself establish the Secretary's separately unfitting limitation.

The contemporaneous Department of Defense authorities are consistent with that reading. Department of Defense Directive ("DoDD") 1332.11 required disability determinations to be based on accepted medical principles and the full medical record, and it defined compensable physical disability to include mental disease. DoDD 1332.11 ¶ II.a, encl. 1 ¶ 1 (Jan. 6, 1954). Defendants' Answer likewise acknowledges that the directive forms part of the governing framework. The requirement that a qualifying physical disability cause unfitness does not establish that every condition included in the resulting disability rating must independently cause unfitness. The Government's reliance on the Directive's reference to "a disability" is misplaced. The singular article fixes the threshold a member must cross to receive any disability compensation — a qualifying, unfitting disability — not whether the conditions comprising an established unfitness may be rated. Nothing in that usage forecloses rating a condition, such as PTSD, that contributes to the unfitting disability.

Historical judicial authority supports this distinction. In *Rieth v. United States*, the Court of Claims applied a 1952 Air Force regulation to a servicemember's 1953 separation. That regulation distinguished independently disabling defects from other permanent or potentially permanent defects and required a percentage determination for both categories. The court held that the correction board improperly omitted a ratable shoulder condition, leaving the member with severance pay rather than disability retirement. 462 F.2d 530, 534–37 (Ct. Cl. 1972). Although the holding rested on an Air Force regulation and did not establish the Navy's governing rule, it demonstrates that independent unfitness was not an inevitable prerequisite to rating an additional condition under the disability-retirement framework then in existence.

Congressional testimony corroborates that historical interpretation. In written responses submitted for a 2007 joint Senate hearing, Lieutenant General James Terry Scott, Chairman of the Veterans' Disability Benefits Commission, reported that before 1986 DoD instructions generally required rating all service-connected disabilities regardless of whether they contributed to the unfitness determination, with an exception for hysterectomies. He attributed the subsequent restriction to a March 25, 1985, DoD General Counsel opinion. *Hearing to Receive Testimony on*

*the Departments of Defense and Veterans Affairs Disability Rating Systems and the Transition of Servicemembers from the Department of Defense to the Department of Veterans Affairs*, S. Hrg. 110-212, at 124–25 (2007) (response of Lt. Gen. James Terry Scott to written question from Sen. Mark L. Pryor). Although the testimony does not identify the particular Navy instruction governing Mr. Swaim's separation, it further supports that conditions contributing to unfitness were ratable under the original statutory language.

The recognition of contributing conditions also predates the 2008 enactment of § 1216a(b). In *Sissel v. Wormuth*, the D.C. Circuit explained that a 1990 Army regulation made a disability compensable if it was itself unfitting or contributed to the unfitting condition. 77 F.4th 941, 943 (D.C. Cir. 2023). The court rejected an additional requirement that the condition contribute significantly to unfitness. *Id.* at 947–49. Although *Sissel* involved later Army authorities and post-2008 review and therefore does not establish the Navy's requirements in 1957, its discussion of the 1990 regulation demonstrates that recognition of contributing conditions did not originate with § 1216a(b). That the court in *Sissel* operated within the § 1554a "second look" window does not blunt the point, because Plaintiff does not cite *Sissel* for any retroactive reach. Plaintiff cites it only for its recognition that a 1990 regulation already treated a contributing condition as compensable, thereby confirming that the rating of contributing conditions predates § 1216a(b). Plaintiff's argument rests on the earlier statutory text and historical authorities; it does not depend on retroactive application of the 2008 statute.

Here, Mr. Swaim's unfitness was established: the Navy separated him because of his duodenal ulcer condition. The Secretary further accepted that Mr. Swaim's PTSD contributed to the development of that unfitting condition. AR 012–13. Yet the Secretary excluded PTSD because it was not separately unfitting. AR 013. Section 1201 did not impose that additional requirement, and the historical authorities undermine the contention that it necessarily followed from the statutory requirement of disability-related unfitness. Moreover, as set forth in Part A above, the Board's Physician Advisor concluded that PTSD was itself unfitting. AR 018–23. Plaintiff

therefore challenges both the legal requirement the Secretary imposed and his rejection of the medical evidence satisfying that requirement.

**(iii) The Government's Retroactivity Argument Mischaracterizes Plaintiff's Position and Does Not Resolve Plaintiff's Challenge Under the Law Governing the 1957 Separation.**

The Government's cross-motion recasts Plaintiff's argument as a request for retroactive application of 10 U.S.C. § 1216a(b) and then invokes the presumption against retroactivity. 10 U.S.C. § 1216a(b) (2008). That framing is mistaken.

The Secretary's separately unfitting requirement fails under the legal framework that governed in 1957 so Plaintiff's claim does not depend on retroactive application of § 1216a(b). As explained above, *Rieth* applied a 1952 Air Force regulation requiring ratings for conditions not independently disabling. Congressional testimony likewise described broader DoD rating requirements before the policy change attributed to the 1985 General Counsel opinion. *Rieth*, 462 F.2d at 534–37; S. Hrg. 110-212, at 124–25. Plaintiff's argument rests on that earlier framework and does not require a finding that § 1216a(b) merely codified an unchanged obligation. Section 1216a(b) is relevant only because it confirms the same basic principle: in rating disability, the Secretary must take account of all medical conditions that render the member unfit to perform the duties of office, grade, rank, or rating, whether those conditions operate individually or collectively. 10 U.S.C. § 1216a(b) (2008). Plaintiff does not ask the Court to apply the 2008 statute to a 1957 separation. The Court can rule entirely for Plaintiff without relying on § 1216a(b) at all.

The Government's contrary premise—that no duty existed before 2008 to consider conditions that contributed to unfitness—misreads both the 1957 framework and the limited role of § 1216a(b). Plaintiff does not contend that § 1216a(b) retroactively supplies the governing rule; the 1957 statute and contemporaneous authorities already permitted rating a contributing condition, and the 2008 statute is significant only as later confirmation of that same principle. 10 U.S.C. § 1216a(b) (2008). The separately unfitting requirement imposed by the Secretary is not found in the 1957 statute, DoDD 1332.11, nor in any contemporaneous Navy instruction. It is instead a post hoc legal construct advanced to justify denial of a correction the Board otherwise

found warranted. Such an after-the-fact rationale, untethered to any governing authority, cannot sustain agency action. *See State Farm*, 463 U.S. at 43.

The Government's principal authority, *Anderson v. United States Department of Defense*, No. 24-cv-1916 (JMC), 2026 WL 850655 (D.D.C. Mar. 27, 2026), does not support a contrary result here and is materially distinguishable. *Anderson* declined to apply § 1216a(b) and *Sissel* to a pre-2008 separation because there was no evidence the PEB thought all of Mr. Anderson's injuries contributed to unfitness. *Id.* Here, by contrast, the Secretary affirmatively found that Mr. Swaim's PTSD contributed to the development of his unfitting ulcer condition. AR 012. That finding places this case within the very principle *Anderson* recognized: even before § 1216a(b), Navy disability rules required rating each unfitting condition, including a condition that causes or contributes to unfitness. On the Secretary's own findings, PTSD is such a contributing condition. The Secretary therefore could not lawfully disregard it by imposing an atextual requirement that it also be separately unfitting.

### B. The Secretary Failed to Apply the Mandatory Liberal Consideration Required by 10 U.S.C. § 1552(h), Which Reaches the Fitness Determination.

#### (i) Liberal Consideration Governs the Fitness Determination, and the Vazirani Memorandum Cannot Narrow the Statute's Command.

The Government's threshold position is that § 1552(h) does not apply at all, because Mr. Swaim received an honorable discharge and seeks a disability-retirement determination rather than a discharge upgrade. That argument fails on the statute's terms. Section 1552(h) governs any correction claim for review of a discharge or dismissal based, in whole or in part, on PTSD related to military sexual trauma; it is not confined to upgrade requests. 10 U.S.C. § 1552(h)(1). An honorable characterization is no bar: the Federal Circuit has held that "having a fully honorable discharge characterization does not preclude liberal consideration." *Qoye v. United States*, 185 F.4th 1139, 1150 (Fed. Cir. 2026). And the statute's "circumstances resulting in the discharge" clause is a freestanding basis for liberal consideration, independent of any change to the discharge characterization. *Doyon v. United States*, 58 F.4th 1235, 1247 (Fed. Cir. 2023). Plaintiff's claim

— that MST-related PTSD contributed to the circumstances resulting in Mr. Swaim's disability separation — falls squarely within the statute.

Plaintiff seeks review of Mr. Swaim's disability separation based on PTSD that the Secretary accepted as arising from military sexual trauma. AR 012–13. Section 1552(h) applies to a former member seeking review of a discharge or dismissal based, in whole or in part, on PTSD or traumatic brain injury related to combat or military sexual trauma, as determined by the Secretary concerned. 10 U.S.C. § 1552(h)(1). For a qualifying claim, the statute requires liberal consideration of whether the condition potentially contributed to the circumstances resulting in discharge or dismissal, or to the original discharge characterization. *Id.* at § 1552(h)(2)(B). The mandate thus addresses both discharge characterization and the circumstances producing the discharge.

The Government contends that liberal consideration applies only to characterization-of-discharge relief and does not extend to the antecedent determination whether the servicemember was unfit for duty. It derives that bifurcated approach from the Vazirani Memorandum. That position cannot be reconciled with the statute's text or with governing case law.

The Federal Circuit addressed that precise issue in *Bee v. United States,* explaining that the Government's position "effectively asks this court to rewrite 10 U.S.C. § 1552(h) to except fitness determinations from liberal consideration, which we cannot do." 181 F.4th 1348, 1361 (Fed. Cir. 2026). The court held that "under 10 U.S.C. § 1552(h), liberal consideration applies to the BCNR's fitness determination when a servicemember seeks to change the narrative reason for their discharge to a medical disability retirement." *Id*. at 1362. Its rationale was straightforward: fitness is a factual determination necessary to resolve the requested correction and therefore falls within the circumstances resulting in discharge. *Id*. at 1360–61. That conclusion follows naturally from *Doyon*, which held that the "circumstances resulting in the discharge" clause is a distinct and broader basis for liberal consideration, not one confined to characterization upgrades. *Doyon*, 58 F.4th at 1247.

The Federal Circuit reiterated that understanding in *Qoye*, citing *Bee* for the application of liberal consideration to both the discharge narrative and the underlying fitness inquiry. *Qoye*, 185 F.4th at 1149. Although the court remanded whether Mr. Qoye's narcolepsy qualified under the applicable guidance, Mr. Swaim presents no comparable uncertainty concerning the qualifying condition. The Secretary accepted that Mr. Swaim's PTSD arose from military sexual trauma. AR 012–13.

The Court of Federal Claims independently rejected the same categorical exclusion in *White v. United States*, holding the Vazirani Memorandum contrary to law insofar as that it was "DoD policy that the application of liberal consideration does not apply to fitness determinations." *White v. United States*, 179 Fed. Cl. 609, 622 (2026). The court reasoned that when liberal consideration applies, it reaches both the factual basis for the servicemember's discharge and any fitness determination resting on those facts. *Id.* at 623. In *Jimenez v. United States*, the court likewise applied § 1552(h) to an MST-related challenge and explained that excluding such a claim under the memorandum would conflict with the statute and is invalid on that point. *Jimenez v. United States*, 179 Fed. Cl. 631 (2026). These decisions share a textual rationale: the statute reaches the circumstances producing discharge, including the factual assessment necessary to determine whether qualifying PTSD warranted a different disability disposition.

Neither those decisions nor *Bee*, *Qoye* and *Doyon* binds this Court. Their statutory reasoning is nevertheless persuasive because it addresses the same statutory language and proposed exclusion presented here. The Government's position has been expressly rejected by the Federal Circuit and independently rejected in the Court of Federal Claims. Applying that analysis here preserves the substantive requirements for disability retirement while giving effect to Congress's separate mandate concerning consideration of qualifying evidence.

The Government acknowledges *Bee*'s fitness holding but distinguishes it because the court did not require liberal consideration in assigning a retroactive percentage rating. Defs.' Mem. at 22. Such distinction does not answer Plaintiff's claim. Plaintiff challenges the failure to apply liberal consideration to the fitness inquiry, not a failure to award a particular percentage through

liberal consideration. The Physician Advisor concluded that PTSD was unfitting; the Secretary rejected his conclusion. AR 013, 022–23. *Bee* directly addresses the evidentiary standard governing that assessment. Any resulting percentage must then be determined under the applicable substantive rating standards.

*Bee* also concluded that liberal consideration is a "more lenient . . . evidentiary standard" and explained: "[A] veteran's testimony and evidence may be given more credit and weight under certain circumstances to establish that the veteran was unfit for duty due to PTSD or TBI." 181 F.4th at 1362 (citing *Doyon*, 58 F.4th at 1238). The assessment must also reflect the applicable Kurta concepts. *Id*. The *Bee* court expressly rejected the Government's argument that accepting the veteran's diagnoses and analyzing the fitness evidence demonstrated liberal consideration. *Id*. at 1362–63. As it explained: "[T]o fully grapple with the evidence, i.e., consider and weigh the evidence in the record, is not liberal consideration but rather the BCNR's basic duty owed to a servicemember's petition." *Id.* at 1363. The resulting instruction was equally explicit: "the BCNR must do more than just consider and weigh Mr. Bee's evidence of unfitness." *Id.*

Other courts have applied the same understanding of evidentiary leniency. The Ninth Circuit held that "'liberal consideration' is a lenient evidentiary standard, that is not strict or literal." *Bussey v. Driscoll*, 131 F.4th 756, 763 (9th Cir. 2025). In *Price v. Army Review Board Agency*, the Western District of Pennsylvania cited *Bee* and *Bussey* and remanded where the board asserted that the claimant supplied no qualifying evidence despite his medical submissions and statements. 2026 U.S. Dist. LEXIS 197181, at *27–31 (W.D. Pa. Sept. 1, 2026).

The Government correctly observes that *Vasquez v. Driscoll*, No. 1:24-cv-1373 (TNM), 2025 WL 1865134 (D.D.C. July 7, 2025), did not decide whether the Vazirani Memorandum lawfully excludes fitness determinations. Defs.' Mem. at 22–23; *Vasquez*, 2025 WL 1865134, at *4 n.5. Plaintiff relies on *Vasquez* for the narrower proposition that failure to apply required liberal consideration warrants remand. Here, the Physician Advisor expressly found PTSD unfitting, and contemporaneous records documented anxiety-related manifestations. AR 022–23, 111–13. The effect of the required evidentiary standard must be assessed against that affirmative evidence.

The Government's defense repeats the reasoning rejected in *Bee*. It relies on the Secretary's acceptance of MST-related PTSD and its contribution to the ulcer condition as demonstrating consideration of the medical evidence. Defs.' Mem. at 14–15. But diagnosis, causation, and fitness are distinct inquiries. The Secretary's acceptance of causation "with or without" liberal consideration did not establish application of the required standard to the Physician Advisor's separate assessment of PTSD-related unfitness. AR 012–13, 022–23. The Government expressly defends withholding liberal consideration from that inquiry. Defs.' Mem. at 21. Acceptance of the first two conclusions cannot cure application of the wrong evidentiary standard to the third.

That exclusion matters to this record. The Secretary emphasized temporary improvement during the initial hospitalization and the absence of a contemporaneous psychiatric disability referral. AR 012–13. The record also contained later anxiety-related manifestations, prolonged hospitalization, and the Physician Advisor's retrospective conclusion that PTSD was itself unfitting. AR 018–23, 111–13. *Bee* explains the relevance of evidentiary leniency to such historical claims by quoting the Kurta Memorandum: "It is unreasonable to expect the same level of proof for injustices committed years ago when TBI; mental health conditions, such as PTSD; and victimology were far less understood than they are today." *Bee*, 181 F.4th at 1362 (*quoting* Dep't of Def., Memorandum for Secretaries of the Military Departments, Clarifying Guidance to Military Discharge Review Boards and Boards for Correction of Military/Naval Records Considering Requests by Veterans for Modification of their Discharge Due to Mental Health Conditions, Sexual Assault, or Sexual Harassment, Aug. 25, 2017, *available at*: https://DOD.defense.gov/Portals/1/Documents/pubs/Clarifying-Guidance-to-Military-Discharge-Review-Boards.pdf). The affirmative evidence of PTSD-related unfitness still required assessment under that more lenient standard. The Secretary instead excluded the standard from the inquiry altogether.

Plaintiff does not contend that liberal consideration compels unfitness, eliminates Plaintiff's burden of persuasion, or dictates a particular disability percentage. *See White*, 179 Fed. Cl. at 623–24. But retaining the claimant's burden does not permit withholding the evidentiary

standard governing whether that burden has been met. The Physician Advisor supplied affirmative medical evidence of PTSD-related unfitness. AR 022–23. The Secretary's rejection of that evidence without liberal consideration warrants vacatur and reconsideration under § 1552(h).

#### (ii) Applying § 1552(h) to the Present Correction Proceeding does not Require Retroactive Application of Later Substantive Disability Law.

Nothing in § 1552(h) limits its application based on the date of separation. The Government's premise that a 1957 separation is too remote in time to qualify for liberal consideration cannot be squared with the statute's purpose or operation. Section 1552(h) exists precisely because many PTSD- and MST-related injustices arose in earlier eras when such conditions were poorly understood, underdiagnosed, or mischaracterized. A temporal limitation of the kind the Government suggests would defeat the statute's central remedial function.

In *Doyon*, the Federal Circuit required liberal consideration of a claim arising from a 1968 discharge and explained why a more lenient standard is appropriate when PTSD was less understood during service. *Doyon v. United States*, 58 F.4th 1235, 1238–39, 1247–49 (Fed. Cir. 2023). Courts have repeatedly applied the statute and its implementing memoranda to decades-old records. *See, e.g.*, *Bussey*, 131 F.4th 756. In *Prewitt v. United States*, 174 Fed. Cl. 759 (2025), the Army Board corrected a 1970 separation to permanent disability retirement on an application filed in 2019—more than fifty years later. These demonstrate that § 1552(h) is not limited to recent cases; it is designed to remedy longstanding injustices.

If the Government's separation-era freeze were correct, servicemembers whose combat-related or MST-related PTSD went unrecognized for decades would be excluded solely because their separations preceded the liberal-consideration mandate. Nothing in the statutory text supports that result.

### C. The Decision Is Unsupported by Substantial Evidence and Arbitrary and Capricious.

#### (i) The Secretary Arbitrarily and Capriciously Rejected the Physician Advisor's Assessment of Unfitness by Relying on Isolated Observations While Disregarding the Medical Evidence Supporting that Assessment.

The sole comprehensive medical assessment of the relationship between Mr. Swaim's PTSD and his fitness for continued service was the opinion of the Board's Physician Advisor, a psychiatrist of the type contemplated by 10 U.S.C. § 1552(g)(2). The Physician Advisor evaluated the available clinical history and expressly concluded that Mr. Swaim "was unfit for service due not only to his duodenal ulcer, but also for PTSD." AR 022–23. He recommended medical retirement based on both conditions. *Id.* The Secretary nevertheless concluded that the record contained no evidence suggesting that Mr. Swaim's mental condition raised doubts about his ability to perform the duties of his office, grade, rank, or rating, and that only his physical symptoms rendered him unfit. AR 013. That categorical conclusion does not reckon with the Physician Advisor's express assessment of PTSD-related unfitness and the clinical evidence supporting it.

The Government contends that the Secretary considered the medical evidence because he accepted that Mr. Swaim had MST-related PTSD and that PTSD contributed to the development of his ulcer condition. Defs.' Mem. at 14–15. It then asserts that "[t]he Secretary's disagreement was not with the medical evidence in the record," but only with the appropriateness of including PTSD in the disability rating. *Id.* at 15. The decision itself contradicts that characterization. The Secretary wrongly concluded that there was no evidence supporting unfitness for mental health. AR 013. To the contrary, the Physician Advisor concluded that PTSD was also unfitting. AR 022–23. The Secretary failed to grapple with this explicit conclusion of the Navy's Physician Advisor.

The Physician Advisor's conclusion did not merely recommend rating PTSD because it contributed to the ulcer. He expressly assessed Mr. Swaim's PTSD itself as unfitting. AR 022–23. Accordingly, this evidentiary challenge does not depend on whether a contributing condition could be rated without independently causing unfitness. It concerns the Secretary's rejection of

affirmative evidence that PTSD itself rendered Mr. Swaim unfit for continued service. The Government's argument that the Board and Physician Advisor improperly relied on the change in the statute in 2008 does not reconcile with the evidence. Defs.' Mem. at 15–16.

The Secretary relied principally on improvement during Mr. Swaim's initial Charleston hospitalization and the absence of a contemporaneous psychiatric disability referral. AR 012–13. Those observations must be evaluated against the complete clinical history and the Physician Advisor's assessment of that history. An agency acts arbitrarily and capriciously when it overlooks an important aspect of the problem or reaches a conclusion running counter to the evidence before it. *State Farm*, 463 U.S. at 43. Here, the Secretary disregarded the full record.

The Secretary emphasized that Mr. Swaim's anxiety symptoms at Charleston mostly subsided after approximately two weeks of treatment. AR 012–13. But that improvement captures only a fragment of the relevant history. Before the Charleston admission, treating providers had documented abdominal symptoms associated with "nervousness" and underlying anxiety. AR 054–55. During the Charleston hospitalization, Mr. Swaim received treatment for ulcer pain, anxiety, and episodes of hyperventilation. AR 056–57. That admission ended when he was returned to duty on February 25, 1957. *Id.* Mr. Swaim's return to duty did not mark the end of the relevant symptoms: while subsequently stationed in Guantanamo Bay, he experienced what he described as a nervous breakdown and requested transfer to the United States for medical treatment. AR 095–96.

On July 15, 1957, Mr. Swaim was admitted to the Naval Hospital in Portsmouth after severe epigastric pain and hematemesis, and remained hospitalized through the proceedings leading to his October 1957 PEB referral. AR 111–13. The clinical report preceding that referral documented "frequent episodes of hyperventilation syndrome" and stated that a prior

neuropsychiatric consultation had attributed those episodes to "anxiety reaction." *Id.* The report recommended PEB review because of the chronicity of his complaints and his previous gastrointestinal hemorrhage. *Id.* Thus, the record closest to the fitness proceedings continued to document anxiety-related manifestations despite the improvement reported during the earlier admission.

The Secretary therefore relied on an isolated interval of improvement while disregarding a broader history of psychiatric and gastrointestinal symptoms and hospitalization across two facilities totaling nearly five months, including an approximately three-month admission immediately preceding the fitness proceedings. AR 004, 018–23, 111–13. That history supplied the clinical context for the Physician Advisor's conclusion that Mr. Swaim was unfit due to PTSD as well as his ulcer condition. AR 022–23. The Government's assertion that the Secretary considered the hospitalization evidence because he accepted the PTSD diagnosis does not address its separate significance for fitness. Defs.' Mem. at 14–15.

The absence of a contemporaneous psychiatric disability referral likewise did not negate the affirmative evidence. The Government emphasizes that providers knew about Mr. Swaim's anxiety symptoms but did not refer him for a psychiatric disability determination, and that the PEB considered only the ulcer condition. Defs.' Mem. at 14–15. Yet the clinical report accompanying the PEB referral documented anxiety-related hyperventilation, and the Physician Advisor retrospectively assessed the available evidence as supporting PTSD-related unfitness. AR 022–23, 111–13. The absence of a separate referral was not an affirmative determination that PTSD was compatible with continued service. Restating what the original proceedings considered does not answer whether the evidence supported correcting Mr. Swaim's disability determination.

This Court has rejected comparable selective treatment of evidence on which an agency relied. In *Sierra Club v. Salazar*, the court explained that the agency cited favorable evidence from a source while disregarding unfavorable evidence from that same source: "Such cherry-picking embodies arbitrary and capricious conduct." 177 F. Supp. 3d 512, 540 (D.D.C. 2016) (citing *Am. Radio Relay League, Inc. v. FCC*, 524 F.3d 227, 237 (D.C. Cir. 2008)). Here, the Secretary relied on the clinical history's initial improvement while failing to grapple with the subsequent anxiety-related manifestations and the Physician Advisor's assessment of that history as establishing PTSD-related unfitness. AR 012–13, 022–23, 111–13.

**(ii) The Secretary's Refusal to Rate Contributing Conditions is Arbitrary and Capricious and Violates the 1957 Law.**

The Secretary expressly accepted that Mr. Swaim's PTSD contributed to the development of the duodenal ulcer condition that rendered him unfit, finding that causal relationship supported "with or without the application of liberal consideration." AR 012. The Secretary nevertheless excluded PTSD from the disability determination because it was not separately unfitting. AR 013. As explained in Section A, Plaintiff challenges that additional requirement under the statutory text and historical authorities governing Mr. Swaim's 1957 separation. That challenge does not depend on retroactive application of § 1216a(b).

There is also a distinct evidentiary defect, developed in Part A above: the Physician Advisor did not merely conclude that PTSD contributed to the ulcer but expressly found that PTSD itself rendered Mr. Swaim unfit, and the Secretary's refusal to engage that finding was arbitrary and capricious. AR 013, 022–23. For the reasons stated there, that defect independently requires vacatur; a correction board may not deny relief by passing over a non-frivolous argument that could affect the disposition. *See Frizelle v. Slater*, 111 F.3d 172, 177 (D.C. Cir. 1997).

Plaintiff's argument is that the Secretary applied an unlawful restriction and, independently, selectively treated the evidence supporting PTSD-related unfitness. As detailed above, the Secretary relied on temporary improvement during the Charleston admission and the absence of a contemporaneous psychiatric referral while disregarding subsequent anxiety-related manifestations, prolonged hospitalization, and the Physician Advisor's assessment of the complete clinical history. AR 012–13, 018–23, 111–13. Those defects require reconsideration of both the governing legal standard and the existing evidence; they impose no obligation to generate a competing medical opinion.

### D. The Proper Remedy Is Vacatur and Remand For Reconsideration Under the Correct Legal Standards.

Plaintiff does not ask this Court to determine fitness or assign a disability rating in the first instance. Plaintiff asks the Court to vacate a decision resting on an unlawful restriction, failure to apply mandatory liberal consideration, and arbitrary treatment of material medical evidence, and to remand for reconsideration under the correct standards.

That relief accords with D.C. Circuit precedent governing military-record correction. Judicial review does not require the Court to substitute its judgment for the Secretary's; it permits the Court to require reconsideration under the appropriate legal standard. *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1511–12 (D.C. Cir. 1989). In *Frizelle v. Slater*, the D.C. Circuit remanded because the correction board failed to address material arguments that were not facially frivolous and could affect its disposition. 111 F.3d 172, 177–79 (D.C. Cir. 1997). Those principles support remand here, where the Secretary's decision rests on the challenged separately unfitting requirement and rejects affirmative medical evidence that PTSD itself rendered Mr. Swaim unfit. AR 013, 022–23.

Failure to apply required liberal consideration likewise warrants reconsideration under the correct standard. *See Vasquez v. Driscoll*, No. 1:24-CV-1373 (TNM), 2025 WL 1865134 (D.D.C. July 7, 2025). As explained in Section B, that requirement reaches the fitness inquiry in Mr.

Swaim's qualifying military-sexual-trauma-related PTSD claim. 10 U.S.C. § 1552(h)(1), (2)(B); *Bee v. United States*, 181 F.4th 1348, 1360–63 (Fed. Cir. 2026). Once fitness is properly determined, the disability rating follows from application of the VA schedule. *Prewitt v. United States* illustrates the point: in retroactively correcting a decades-old separation, the board adopted the veteran's VA rating for the unfitting condition after the underlying fitness error was corrected. *Prewitt v. United States*, 174 Fed. Cl. 759 (2025).

The same course is available here. The Board's Physician Advisor already identified the relevant components of the disability analysis—thirty percent (30%) for PTSD and twenty percent (20%) for duodenal ulcer. The Board itself recognized that those ratings produce a combined rating of forty percent (40%), above the thirty percent (30%) threshold for disability retirement. On remand, the Secretary should apply the liberal-consideration mandate under 10 U.S.C. § 1552(h) to the fitness inquiry and evaluate the disability claim under the framework governing 1957 separation, without imposing an extra-statutory requirement that PTSD be separately unfitting. The appropriate rating and resulting record corrections remain matters for lawful agency determination.

The Government's remaining reliance on the Wilkie Memorandum does not alter that conclusion. The memorandum's observation that narrative-reason corrections based solely on equitable injustice ordinarily should not result in monetary relief has no bearing here. *See* Dep't of Def., Memorandum for Secretaries of the Military Departments, Guidance to Military Discharge Review Boards and Boards for Correction of Military/Naval Records Regarding Equity, Injustice or Clemency Determinations, Jul. 25, 2018, *available at*: https://afrba-portal.cce.af.mil/app/assets/2018-Wilkie-Memo-25-Jul-2018-DRB-Guidance.pdf. The Wilkie Memorandum addresses the exercise of the boards' equitable authority; it does not authorize the Secretary to disregard the statutory standards governing fitness and disability determinations.

Plaintiff does not seek benefits by virtue of an injustice-only change to the narrative reason for separation. Plaintiff seeks the relief that follows from a corrected fitness determination and a lawful disability determination under chapter 61 of title 10 and 10 U.S.C. § 1552(h). The Wilkie

Memorandum therefore provides no defense to the legal errors at issue and no basis to deny vacatur and remand.

## III. CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's motion for summary judgment, deny Defendants' cross-motion, vacate the Secretary's decision, and remand to the Department of the Navy for reconsideration under the correct legal standards.

Dated: October 8, 2026

Respectfully submitted,

*/s/ Kevin E. Gaunt*
Kevin E. Gaunt (DC Bar No. 1008697)
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Ave, NW Suite 900
Washington, DC 20037-1701
Telephone: (202) 419-2182
kgaunt@hunton.com

Esther Leibfarth (DC Bar No. 1016515)
Rochelle Bobroff (DC Bar No. 420892)

NATIONAL VETERANS LEGAL
SERVICES PROGRAM
1100 Wilson Blvd., Suite 900
Arlington, VA 22209
Phone: (202) 621-5681
esther@nvlsp.org
rochelle@nvlsp.org

*Counsel for Plaintiff*